

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-17-295

|  |  |
|---|---|
| | **Opinion Delivered** September 20, 2017 |
| BURT ROGERS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-13-582]<br><br>HONORABLE LEIGH ZUERKER, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Burt Rogers appeals the Sebastian County Circuit Court's order terminating his parental rights to his daughter, A.B. (born July 25, 2007). His sole challenge to the termination order is that there was insufficient evidence of the statutory ground supporting the termination. We affirm.

A.B.'s case originated with a referral to the child-abuse hotline due to concerns a hospital had regarding the care A.B.'s mother, Markita Bell, was providing to A.B.'s newborn sister, L.B. Thereafter, the Arkansas Department of Human Services (DHS) removed L.B. from the custody of Bell and filed a petition for emergency custody and dependency neglect on October 7, 2013. DHS filed an amended petition for emergency custody and dependency-neglect on November 12, 2013, adding A.B. as a dependent juvenile; however, A.B. was not removed from Bell's custody. Quincy Johnson was listed as A.B.'s putative father.

On December 10, 2013, L.B. was adjudicated dependent-neglected at the adjudication hearing, and A.B. was deemed dependent-neglected by virtue of L.B.'s adjudication. L.B. remained in foster care, and A.B. remained in Bell's custody as of the review hearing on February 11, 2014, the permanency-planning hearing on August 12, 2014, and the fifteen-month permanency-planning hearing on November 18, 2014. On January 29, 2015, DHS filed a petition for the termination of parental rights against Bell as to L.B. only, and Bell's parental rights as to L.B. were involuntarily terminated.

On February 12, 2015, DHS received a hotline call alleging that Bell was engaged in prostitution and using illegal drugs while A.B. was with Bell. DHS exercised a seventy-two-hour hold on A.B. on February 23, 2015, and on February 26, 2015, DHS filed a petition for emergency custody and dependency-neglect regarding A.B. An order was entered on April 3, 2015, finding probable cause existed for A.B. to remain in foster care. An adjudication order finding that A.B. was dependent-neglected was entered on May 14, 2015. Johnson was noted as A.B.'s putative father in these orders.

Another review-hearing order was entered on December 11, 2015. Johnson was listed as A.B.'s putative father, and the circuit court noted Rogers's attendance at hearings on November 10 and 30, 2015. Rogers submitted to DNA paternity testing on January 27, 2016. The following day, Rogers was arrested and was subsequently sentenced to three years in the Arkansas Department of Correction.

A permanency-planning hearing was held on February 16, 2016, at which time the circuit court set a concurrent goal of adoption. DHS filed a petition on April 26, 2016, seeking to terminate the parental rights of Bell and Johnson to A.B. Rogers was not mentioned. A

SLIP OPINION

fifteen-month review order was entered on June 23, 2016, in which the court found that, based on DNA testing, Rogers was A.B.'s legal father. The court set the matter for a termination hearing.

On May 24, 2016, DHS filed an amended petition for termination of parental rights against Rogers, as the legal father of A.B. With respect to Rogers, DHS alleged that (1) A.B. had lived outside the home of her parents for more than twelve months and that Rogers had willfully failed to maintain meaningful contact with her; (2) factors had arisen subsequent to the filing of the original petition for dependency-neglect that demonstrated that placement of A.B. with Rogers was contrary to her health, safety, or welfare, and despite the offer of appropriate family services, Rogers had manifested the incapacity or indifference to remedy the subsequent factors; and (3) Rogers had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of A.B.'s life. Rogers, who was incarcerated at the time, filed a statement indicating that he expected to be released in the summer of 2016 and that he wanted to be considered as a placement option for A.B. The court entered an order appointing counsel for Rogers on July 7, 2016.

At the November 17, 2016 termination hearing, DHS family-service worker, Lisa Walton, testified that she first met Rogers on August 31, 2015. She advised him that DNA testing was required and had been requested. She further advised Rogers that he needed to obtain appropriate housing, income, and transportation. She told Rogers he needed to attend parenting classes, which she offered. Rogers reported to Walton that he had a home and received SSI benefits for mental-health issues but that he did not have a vehicle. He said that he is a convicted felon, is on parole for two years, and was looking for a job. Rogers told

Walton that he already had a mental-health therapist, and Walton recommended that he return to his therapist and get back on his medications. Walton also recommended that he resolve his legal issues.

Walton testified that she met with Rogers a second time on October 25, 2016. He had just been released from prison the week prior. Rogers advised that he was living with his mother, had SSI, and was looking for a job and an apartment. He also stated that he had completed parenting, anger-management, and communication classes while incarcerated.

Walton opined that A.B. would be subjected to potential harm if placed in Rogers's custody because they did not have a bond. Walton testified that A.B. is adoptable despite her special needs[1] and that her foster family was interested in adopting her.

Rogers testified that when he first met with Walton in August 2015, she said DNA testing was required, to which he submitted. She also told him that he needed to attend parenting classes. Rogers said that he had the opportunity to take parenting classes before he was incarcerated but did not. When questioned why, he said:

> Well, uh, I was working and, you know. Really, I mean – I'm not sure, ma'am. I felt – I felt like, uh – I felt like it needed to be done. I didn't get it done, uh – I don't know, hesitation, ma'am.

Rogers also testified that he had been diagnosed with bipolar disorder and schizophrenia but did not take medication. He stated that Walton recommended that he return to his counselor for his mental-health issues and medication, but he said he did not do so because he did not feel like he needed it.

---

[1]Walton testified that A.B. has developmental delays.

Rogers said that he had been arrested on January 28, 2016, for maintaining a drug premises, being a felon in possession of a firearm, and possession of a controlled substance with the purpose to deliver. He was sentenced to three years' imprisonment. He conceded that his housing at the time of his arrest was not a safe environment for a child. At the time of the termination hearing, he stated that he was living with his mother but was trying to get his own apartment. Rogers testified he is still on parole. He said that he had not seen A.B. since she was four years old (she was nine at the time of the hearing) but that he loved her and wanted to spend time with her.

At the conclusion of the hearing, the circuit court orally granted DHS's petition terminating Rogers's parental rights to A.B. The court found that DHS proved the subsequent-factors ground based on Rogers's delay in complying with services coupled with his incarceration during the case. The court further found that termination is in A.B.'s best interest. Specifically, the court found that A.B. is adoptable and that returning her to Rogers created a substantial risk of harm in that he had just been released from prison the month before the hearing, he lacked housing, and he had not seen A.B. in five years. The court stated to Rogers, "Your child at this point does not know you."

The court entered an order terminating Rogers's parental rights to A.B. on January 19, 2017.[2] The court stated:

> Before DNA evidence confirmed that [Rogers] was the father, he attended court hearings and had contact with the Department to figure out what he needed to do to obtain custody of his child, should DNA confirm he was the father. Mr. Rogers was given some instructions on what he could work on in August 2015. He attended Court on at least November 10 and November 30, 2015. Mr. Rogers was arrested in January

---

[2]The parental rights of Bell, A.B.'s mother, were also terminated in this order. Bell is not a party to this appeal.

2016 and released last month. He testified that he did not know why he did not start working the case plan sooner. . . . He is currently on parole. He chose to get involved in illegal activity during the course of this case which resulted in a conviction for which he served some jail time. He is not currently in a position to take a child. . . . Mr. Rogers has not seen [A.B.], who is now nine years old, since she was four. She does not have a bond with him. He testified that he does not have stable housing for the child if she were to be placed in his custody.

This appeal followed.

Termination-of-parental-rights cases are reviewed de novo. *Jackson v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 411, at 4, 429 S.W.3d 276, 279. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.*, 429 S.W.3d at 279. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.*, 429 S.W.3d at 279. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, 429 S.W.3d at 279. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*, 429 S.W.3d at 279. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*, 429 S.W.3d at 279. In order to terminate parental rights, the circuit court must find by clear and convincing evidence that one or more statutory grounds for termination exists. *Jackson*, 2013 Ark. App. 411, at 5, 429 S.W.3d at 279 (citing Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2011)). Proof of only one statutory ground is sufficient to terminate parental rights. *Id.* at 5, 429 S.W.3d at 279.

The circuit court found that only one ground supported termination of Rogers's parental rights—the subsequent-factors ground—which provides:

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)* (Repl. 2015). Rogers argues that there was insufficient evidence submitted to support this ground because DHS "failed to prove that it offered any appropriate family services to [him] and there was no evidence that [he] failed to remedy any supposed subsequent factor."[3] For support, he cites *Jackson*, wherein the father made the same argument and our court reversed the circuit court's termination decision.

In *Jackson*, the father made his first appearance in the dependency-neglect proceeding at the termination hearing. The court continued the hearing as to him and appointed him counsel. *Jackson*, 2013 Ark. App. 411, at 3, 429 S.W.3d at 278. The father's parental rights were later terminated based on three grounds, one of which was the subsequent-factors ground. On appeal, he contended that DHS failed to offer any appropriate family services to him and that there was no evidence that he failed to remedy the subsequent factor. *Id.* at 8, 429 S.W.3d at 281. We agreed with the father and reversed because the evidence demonstrated that the caseworker did not speak with the father at the termination hearing, she did not provide him her contact information, she never attempted to contact him after the hearing to determine

---

[3]Rogers does not challenge the circuit court's best-interest finding.

whether he was a suitable caregiver, and she did not attempt to identify any services that might permit reunification. *Id.* at 8–9, 429 S.W.3d at 281.

The facts in the instant case are distinguishable from those in *Jackson*. First, Rogers participated in this case and had communications with DHS. He attended two review hearings. He met with his caseworker, Walton, twice—before and after his incarceration. Second, Walton offered services to Rogers. She referred him for DNA testing and parenting classes. She recommended that he return to his mental-health counselor for treatment and medication. She advised that he needed to obtain stable housing, income, and transportation. She further advised that he needed to resolve his legal issues. Third, the evidence demonstrated that Rogers did not comply with Walton's referrals or recommendations. He admitted that he had the opportunity to attend parenting classes before his incarceration but that he did not do so and he offered no reason for not doing it. He candidly testified, "I didn't get it done." He did not return to his mental-health counselor because he did not think he needed to. After he met with Walton and was to be working on his case plan, he committed three crimes and was sentenced to a three-year term of imprisonment. Notably, his crimes were committed in his home during the time in which he was supposedly trying to obtain stable housing. Rogers admitted that the home was not a safe environment for a child. At the time of the termination hearing, Rogers still did not have stable housing or a job. His legal issues had not been resolved; he had been released from prison one month and was still on parole.

This evidence of Rogers's failure to engage in services recommended by DHS and his incarceration during the pendency of the case is clear and convincing evidence that supports

the circuit court's subsequent-factors ground for termination. Accordingly, we affirm the order terminating Rogers's parental rights to A.B.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Jonathan R. Streit*, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.